In the Matter of DONALD KNIGHT et al., Appellants, v. LEONARD D. BODKIN et al., Constituting the Zoning Board of Appeals of the Town of Orangetown, Rockland County, Respondents; UNIVERSAL METAL CHAIN Co., INC., Respondent-Intervenor.

In the Matter of the PALISADES INTERSTATE PARK COMMISSION, Appellant, v. LEONARD D. BODKIN et al., Constituting the Town of Orangetown Zoning Board of Appeals, Respondents; UNIVERSAL METAL CHAIN Co., INC., Respondent-Intervenor.

Second Department, May 21, 1973.

*Doig, Cornell & Mandel* (*J. Martin Cornell* of counsel), for Donald Knight and others, appellants.

*Louis J. Lefkowitz, Attorney-General* (*Paul S. Shemin, Irving Gault* and *Philip Weinberg* of counsel), for the Palisades Interstate Park Commission, appellant.

*William Snair* (*George M. Bergerman* of counsel), for respondents.

*Granik, Garson, Silverman & Nowicki* (*Joseph F. X. Nowicki* of counsel), for intervenor-respondent.

BENJAMIN, J. In these consolidated proceedings pursuant to article 78 of the CPLR the petitioners sought to annul a determination of the respondent Zoning Board of Appeals of the Town of Orangetown which granted a special permit to the intervenor-respondent, Universal Metal Chain Co., Inc. to construct, on approximately 2 acres of its 22.6 acres of property, a plant for the purpose of manufacturing metal chains for chandeliers and lamps.

The Special Term confirmed the determination in part and these appeals are from such confirmation. We reverse and annul the determination.

Universal's property is situated in one of the most scenic areas of the Hudson Valley. It fronts the west side of State Highway Route 9-W, approximately 1,600 feet north of the intersection of Oak Tree Road and Route 9-W. Tallman Mountain State Park is on the easterly side of Route 9-W and opposite the property. There is a restaurant at the site. To the south are four scattered residences, a golf driving range and an antique shop. North of the premises are three residences, a country club and another antique shop. On the east side of Route 9-W and to the north is the park entrance. Further north is the intersection of Route 340. South of the subject premises and the

park are two gasoline stations. Universal's 22.6 acres are part of a larger area of approximately 70 acres zoned "LO", i.e., for laboratories, offices, etc. In the immediate neighborhood of Universal's site is a mixture of single-family residential districts, which require 40,000 or 80,000 square feet lots, and "LO" districts. The acreage owned by Universal has a total area of about 985,000 square feet, with frontage of 175 feet, and the proposed one-story building of 72,000 square feet will be erected more than 400 feet west of Route 9-W.

Prior to 1969, the subject property was zoned "LO", in which the ordinance permitted light manufacturing upon the issuance of a special permit. In 1969, the town rezoned the area for residential use because of the number of historic mansions in the area. Interestingly, Universal joined in the application to rezone the area. Then Universal applied for approval of its plans to erect the building. The application was denied. In litigation which followed, it was held that the historical residential zoning was unconstitutional, as applied to Universal's property, because the land at that time could not be subdivided into single-acre parcels. By a decision dated September 24, 1970, the property was placed back into the "LO" zone, with light manufacturing allowed by special permit. "LO" zoning allows, as a matter of right, the following uses: public parks, playgrounds, office buildings, laboratories, public utility substations, schools, fire, police and community owned ambulance stations, town garages and municipal parking lots.

On March 2, 1971, Universal again applied for a special permit. Since the premises are situated within 500 feet of a State park, the application was referred to the Rockland County Planning Board (General Municipal Law, § 239-m). That statute further provides that, if the planning board recommends that the application be denied, the "municipal agency having jurisdicion shall not act contrary to such disapproval or recommendation except by a vote of a majority plus one of all the members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action." The Rockland County Planning Board recommended that the special permit application be denied. On May 19, 1971 the Zoning Board held a public hearing on the application and in a decision dated June 18, 1971 it unanimously approved the special permit despite the opposition of the Planning Board and Palisades Interstate Park Commission, but made no findings supporting that decision.

Thereafter, two separate article 78 proceedings were brought against the Zoning Board, one by property owners (Donald

Knight and others) and the other by the Palisades Interstate Park Commission. Those proceedings resulted in a remission of the matter to the Zoning Board to make findings in accordance with section 4.31 of the Zoning Ordinance of the Town of Orangetown, to set forth reasons for granting the application, as required by section 8.323 of the Zoning Ordinance, and to set forth its reasons for acting contrary to the recommendation of the Planning Board.

Section 4.31 of the zoning law provides, in pertinent part, as follows: " Special Findings. Before granting a special permit * * * the Board of Appeals * * * shall make the following special findings * * * That the proposed use as described and represented by the applicant * * * (4) will not adversely affect the character of or property values in the area."

Section 8.323 of the zoning law provides, in pertinent part, as follows: " Findings and conclusions. After such public hearings the Board of Appeals shall make written findings of fact and conclusions concerning the subject matter of such hearing, including the reasons for the grant or denial of the relief sought."

In keeping with the Special Term's remitting decision, the Zoning Board on October 20, 1971 held a second hearing, and on December 15, 1971 the Zoning Board again approved the issuance of a special permit over the objections of the Palisades Interstate Park Commission, the Planning Board and the local community.

Subsequent to this second hearing two new article 78 proceedings, which are the subject of the present review, were initiated by the same petitioners. These proceedings were consolidated and in a judgment dated April 13, 1972 the Special Term again directed a remission to the Zoning Board, but this time for a hearing and further consideration on only the question of whether the proposed use will conform with the performance standards in the zoning ordinance, and " in all other respects " confirmed the determination. These appeals are from the portion of the judgments which granted such confirmation.

While the scope of our review is limited to whether, viewing the record as a whole, the determination of the Zoning Board is supported by substantial evidence, the more pointed issues are as follows: (1) Is a factory for the purpose of manufacturing chains for chandeliers and lamps " light manufacturing " within the meaning of the zoning ordinance and (2) if it is considered to be " light manufacturing " will it have an adverse impact upon the character of the property in the area?

The petitioners' experts testified that the proposed factory was undesirable because it would not blend with either the existing residential uses or the zoned uses in the "LO" district, that it would lead to the development of a 70-acre factory industrial park and that it would adversely affect the real estate values in the area.

On the other hand, Universal's expert merely testified that the structure would not have an adverse effect on property *values* either in the immediate vicinity or in the general area of the subject property. Questions were asked by the petitioners on cross-examination intended to elicit information regarding the effects of the proposed factory upon the character of the community. An objection made by the applicant's attorney to this line of questioning was sustained by the Zoning Board and such opinion evidence was not, therefore, available.

Where a zoning ordinance, such as here, authorizes a special permit subject to administrative approval, what is involved is a use which is permitted rather than proscribed by the zoning regulations and for that reason there is imposed upon the zoning board and the applicant a duty and burden entirely different than an application for a variance (*Matter of North Shore Steak House* v. *Board of Appeals of Inc. Vil. of Thomaston*, 30 N Y 2d 238; 3 Anderson, American Law of Zoning, §§ 15.01, 15.11). In the latter case, the zoning board's power is to be sparingly exercised and only in rare instances, based upon unique circumstances and a showing of hardship. No such proof is required for a special permit. The issuance of such a permit is a duty, imposed upon the zoning board once it is shown that the proposed use meets the standards prescribed by the ordinance (*Matter of North Shore Steak House* v. *Board of Appeals of Inc. Vil. of Thomaston, supra*; *Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330; *Matter of Picone* v. *Commissioner of Licenses of City of N. Y.*, 241 N. Y. 157; Anderson, *Z*oning Law and Practice in New York State, § 19.12).

We are concerned here not with the usual conflict between a private owner and a local community vested with primary zoning responsibility. Rather, this is a conflict between the town, county and State agencies deeply concerned with the broader question of environmental impact upon the area. The petitioners consider that the proposed factory would be a serious blight upon the entire area and, more particularly, that it would have a destructive impact upon the aesthetic values created by the existence of Palisades Interstate Park, one of the Nation's most beautiful scenic resources.

On this record, Universal did not show that the factory it wishes to erect will not adversely affect the character of the area or that it would in fact be for light manufacturing in harmony with the zoning scheme, thus justifying the issuance of a special permit.

I am in complete agreement with the position taken by the petitioners and am of the opinion, therefore, that we should reverse the judgment insofar as appealed from and annul the Zoning Board's determination.

First, one would be hard pressed to characterize the enterprise in question as light manufacturing. We are dealing with a structure which will occupy approximately two acres. In it there would be manufacturing of heavy steel chains to support overhead light fixtures and, according to testimony given by Universal's president, the use would necessarily call for the services of trucks, some being heavy tractor-trailers, at the rate of one per hour. Further, the factory poses a serious problem of air pollution, acknowledged by the Special Term. This is not the type of industry which would provide a buffer between a residential or commercial district and a heavy industrial district. Clearly, light manufacturing is an inappropriate label to characterize the type of factory which Universal wishes to erect. The expert testimony is to the effect that an office building or laboratory is unlikely to be erected adjacent to such a factory. This adverse effect on the zoned uses should alone be reason enough to deny the permit.

Second, the evidence in the record shows that the character of the area is rural, residential and recreational. The area is one of the few remaining ones of unspoiled space in the historic Hudson Valley and was heretofore appropriately zoned by this very zoning board as an historic residential area. Indeed, Tallman Mountain State Park, one of 16 parks in the chain which makes up the magnificent Palisades Interstate Park, is visited annually by several millions of persons and, as heretofore mentioned, is opposite the proposed factory and accessible from Route 9-W. A chain factory in this area would surely be incongruous and would, without question, sharply alter the character of the area.

The expert testimony establishes that the erection of such a factory would effectively dispel the potential for the construction of office buildings, laboratories, or any of the other zoned uses. Thus, lest the land lie fallow, the grant of the permit would open the area to a torrent of industrialization in contravention of the zoning ordinance.

The testimony indicates that the proposed factory would not only adversely affect the character of the community, but would be intrinsically inharmonious with the uses for which the land is zoned and Universal is not per se a valid applicant for a special permit.

Accordingly, the judgment should be reversed insofar as appealed from and the determination of the Zoning Board annulled, on the law, without costs.

SHAPIRO, J. (dissenting). The subject property owned by the intervenor-respondent, Universal Metal Chain Co., Inc. (Universal), consisting of 22.6 acres, is located in a district zoned Laboratory-Office (" LO "). That zoning, *as a matter of right,* permits the land to be used for public parks, playgrounds, office buildings, laboratories, public utility substations, schools, fire police and community-owned ambulance stations, town garages and municipal parking lots and, by *special permit,* for light manufacturing.

In granting Universal a special permit to build a factory for the manufacture of metal chains for chandeliers and lamps the Town of Orangetown Zoning Board of Appeals unanimously determined that the granting of the special permit will not adversely affect the character of or the property values in the area, that the petitioners' witnesses' testimony was directed to the " LO " zoning rather than to the specific application and its effect on the neighborhood, that the main argument against the permit was the possibility that the entire area would become commercial, that the Zoning Board cannot speculate as to possible future applications, that Route 9-W is a commercial highway, that the building would not be visible from the road or street and that the uses permitted as of right would be more detrimental to the community than the one under review. Special Term confirmed the Zoning Board's grant of a special permit, except that it remitted the matter embraced in finding No. 3 to the Zoning Board for further consideration.[1]

In explaining the different approaches to be used in considering an application for a special permit vis-à-vis an application for a variance, the Court of Appeals in *Matter of North Shore Steak House* v. *Board of Appeals of Inc. Vil. of Thomaston* (30 N Y 2d 238, 243–244) said:

" The denial of the special exception permit, based on factual findings used to support denial of the variance, ignores the fun-

---

1. Special Term said that finding No. 3 " insofar as it relates to dangerous, injurious, noxious or otherwise objectionable smoke, dust, or other forms of air pollution, is not based on adequate evidence." I agree with that conclusion.

damental difference between a variance and a special exception permit. A variance is an authority to a property owner to use property in a manner forbidden by the ordinance while *a special exception allows the property owner to put his property to a use expressly permitted by the ordinance. The inclusion of the permitted use in the ordinance is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood* (2 Rathkopf, Law of Zoning and Planning, Ch. 54, pp. 54-3–54-4; *Matter of Reed v. Board of Stds. & Appeals,* 255 N. Y. 126; *Matter of Syosset Holding Corp.* v. *Schlimm,* 4 A D 2d 766; *Matter of Bar Harbour Shopping Center* v. *Andrews,* 23 Misc 2d 894). Denial of the permit on the ground that the extension of the parking lot 25 feet into the residential zone is 'not * * * in harmony with the general purpose and intent of the zoning plan' is, thus, patently inconsistent. (See, generally, 3 Anderson, American Law of Zoning, § 15.13.)

*" The burden of proof on an applicant for a special exception permit is much lighter than that required for a hardship variance* (*Verona* v. *West Caldwell,* 49 N. J. 274; Anderson, *op. cit., supra,* § 15.21). *It does not require the applicant to show that it has been denied any reasonable use of the property but only that the use is contemplated by the ordinance subject only to ' conditions ' attached to its use to minimize its impact on the surrounding area* " (emphasis supplied, except as to citations).

(See, also, to the same effect, *Matter of Larkin Co.* v. *Schwab,* 242 N. Y. 330; *Matter of Picone* v. *Commissioner of Licenses of City of N. Y.,* 241 N. Y. 157; Anderson, Zoning Law & Practice in New York State, § 19.12.)

Thus, once it is established that a proposed use meets the standards specified in the zoning ordinance, the zoning board is required, *as a matter of law,* to issue a special permit. That is the case here and the conclusion of the majority that " on this record, Universal did not show that the factory it wishes to erect will not adversely affect the character of the area or that it would in fact be for light manufacturing in harmony with the zoning scheme, thus justifying the issuance of a special permit " is simply the product of its wish to reach what it evidently considers to be a desirable result.[2] This is made manifest when it describes

2. The statement in the majority opinion that " one would be hard pressed to characterize the enterprise in question as light manufacturing " and that it would constitute "manufacturing of *heavy* steel chains " finds no support in the record. On the contrary, the record is clear that the type of chain to be manufactured is " small chain, generally used in the decorative type lamps used probably in industry and in the home, and as an accessory towards lamps " (record, p. 174).

the controversy here as not " the usual conflict between a private owner and a local community vested with primary zoning responsibility " but " rather   *   *   *   a conflict between the town, county and State agencies deeply concerned with the broader question of environmental impact upon the area " and when it states that it is " in complete agreement with the position taken by the petitioners " that Universal's building " would be a serious blight upon the entire area and, more particularly, that it would have a destructive impact upon the aesthetic values created by the existence of Palisades Park."[3]  In accepting the petitioners' contentions, however, the majority has constituted itself an original trier of the facts and completely disregarded its own statement of the law, with which I fully agree, that " the scope of our review is limited to whether, viewing the record as a whole, the determination of the Zoning Board is supported by substantial evidence."  (See, in this connection, the decision of the Court of Appeals in the *Matter of De Rham* v. *Diamond,* 32 N Y 2d 34.)

With that limitation on our review power, how can we justifiably say that there is no substantial evidence in the record to support the grant of a special permit when the members of the Zoning Board, based upon the testimony of Universal's recognized expert of long experience and its other witnesses, and themselves being familiar with the area, having visited the site on a number of occasions, found that the building to be erected would not be visible from the road or from any existing street or structure, that it would be esthetically well located, that it would be so constructed that any noise generated from within it would be there confined, that the surrounding undeveloped portion of the property will be landscaped or kept in an undisturbed condition, that the proposed future development of the surrounding area is compatible with the proposed use of the subject land *and that the uses permitted as of right, under the " LO " zoning, would be more detrimental to the community than Universal's proposed use?*[4]

3. How this proposed factory, *hidden from view,* could possibly constitute " a serious blight upon the entire area " is difficult for me to understand, in the face of the undisputed facts that in the immediate vicinity of the subject property, *and visible to one and all,* there is a Chinese restaurant, a miniature golf course and driving range, a gasoline service station, a real estate office and a cemetery and that Route 9-W is a heavily traveled truck highway.

4. The effect of a proposed use on the neighborhood is a proper consideration in determining whether a special permit should be granted, but the rationale of the use is to insure that certain uses will be excluded from areas where they will be harmful (*Matter of Young Women's Hebrew Assn.* v. *Board of Stds. & Appeals,* 266 N. Y. 270, mot. for rearg. den. 266 N. Y. 672, app. dsmd. *sub*

With such a record and with a recognition of our limited power of review, the majority, in substituting its judgment for that of the Zoning Board, is flying in the face of all recognized authority.[5] I refuse to fly with it. I therefore dissent and vote to affirm the judgment insofar as appealed from.

LATHAM, Acting P. J., and BRENNAN, J., concur with BENJAMIN, J.; SHAPIRO, J., dissents and votes to affirm the judgment insofar as appealed from, in an opinion in which CHRIST, J., concurs.

Judgment of the Supreme Court, Rockland County, dated April 13, 1972, reversed insofar as appealed from, without costs, and respondents' determination annulled, on the law.

---

nom. *Gelkom Realty Corp.* v. *Young Women's Hebrew Assn*, 296 U. S. 537; *Matter of Reed* v. *Board of Stds. & Appeals*, 255 N. Y. 126; *Matter of Gordon* v. *Plonski*, 11 A D 2d 693, revd. on other grounds 9 N Y 2d 886) though such an anticipated result will not support a denial of a special permit unless the harm created thereby is greater than that of uses permitted in the district without a special permit (*Matter of Long Is. Light. Co.* v. *Griffin*, 272 App. Div. 551, affd. 297 N. Y. 897; *Matter of Cantelli* v. *Town Bd. of Town of Oyster Bay*, 28 Misc 2d 126; Anderson, Zoning Law and Practice in New York State, § 19.16).

5. It is hornbook law that in the absence of a showing that a zoning board's decision, aided as it is by a presumption in favor of its correctness, is arbitrary and capricious, its determination should not be disturbed (*Matter of North Shore Steak House* v. *Board of Appeals of Inc. Vil. of Thomaston*, 30 N Y 2d 238, supra; *Matter of Lemir Realty Corp.* v. *Larkin*, 11 N Y 2d 20; *Matter of Dowling Coll.* v. *Schermerhorn*, 35 A D 2d 821, affd. 28 N Y 2d 908; *Matter of Agoglia* v. *Glass*, 35 A D 2d 954, affd. 29 N Y 2d 535; *Matter of Farrelly* v. *Town of Ramapo*, 35 A D 2d 957, mot. for lv. to app. den. 28 N Y 2d 484; Anderson, Zoning Law and Practice in New York State, § 22.08).