In the Matter of DIL-HILL REALTY CORPORATION, Respondent, v IRWIN S. SCHULTZ et al., Constituting the Zoning Board of Appeals of the Town of Greenburgh, Appellants.

Second Department, July 6, 1976

*Joel H. Sachs, Town Attorney (Ruth E. Roth* of counsel), for appellants.

*Blasi & Zimmerman (Davis M. Zimmerman* of counsel), for respondent.

SHAPIRO, J. The petitioner is the owner of adjoining Parcels 20 and 21A in the Town of Greenburgh. The appellants, constituting the Zoning Board of Appeals of the Town of Greenburgh, appeal (1) from a judgment of Special Term which directed the board to (a) reinstate certain area variances which it granted the petitioner on August 17, 1972 and (b) forthwith grant petitioner the special permit it sought as to Parcel 21A under section 65-9A of the Greenburgh Zoning Ordinance and (2) as limited by their brief, from so much of an order of Special Term as, upon reargument, adhered to the original determination. The permit sought would allow petitioner to use Parcel 21A for additional parking spaces for the occupants and users of the commercial building to be erected on Parcel 20 pursuant to the variances. For the reasons hereafter stated, the appeal from the judgment should be dismissed as academic, the judgment having been superseded by the order made upon reargument, and the order should be affirmed insofar as appealed from.

In its grant of the area variances, the board permitted the petitioner to (1) reduce (a) the size of one side yard and (b) the required minimum distance between the rear lot line and the off-street parking area, and (2) provide only 289 off-street parking spaces on Parcel 20, instead of the 444 spaces required under the zoning ordinance, upon condition that construction of the proposed building on Parcel 20 begin within a period of one year. Petitioner did not meet this condition, but made timely application for an extension of the one-year period. Shortly after the variances were granted, the petitioner purchased the adjoining parcel (Parcel 21A), which consists of nine tenths of an acre, from the executors of the Hall estate. That parcel was part of approximately 34 acres of land comprising the estate, all of which was zoned for residen-

tial use. It also appears that the Town of Greenburgh, at about the same time that the petitioner purchased Parcel 21A, was negotiating for and, on or about February 28, 1973, contracted to purchase, the remaining 33 acres of the Hall estate for use as a wildlife and nature preserve and study center.

When the petitioner applied to the board for an extension of the one-year period, it also applied for a special permit pursuant to section 65-9A of the Greenburgh Zoning Ordinance, which deals with lots which are in two types of zoning use districts. The petitioner wanted to use Parcel 21A for some 70 additional off-street parking spaces for tenants and users of the building approved for erection on Parcel 20 by the variances which the board had previously granted. In its application for a special permit, petitioner provided for a screening area within the border of Parcel 21A along its boundary with the Hall estate.

The board held new hearings on the two applications. It denied both, but took no testimony as to whether the original finding of hardship upon which it based its original grant of the variances, was still valid. Its findings, rejecting both applications, were grounded upon the fact that it was not advised by the applicant, and was not aware when it granted the variances as to parking spaces and building setbacks, "that the applicant was not to be the developer; that [the] Town of Greenburgh was then negotiating to purchase the Hall Estate consisting of some 34 acres immediately adjacent to the subject property for use as a Town Park and Nature Center; or that the applicant was then negotiating to acquire from the Executors of the Hall Estate a parcel consisting of some 9/10 acre contiguous to the subject parcel." The board declared that those developments, plus the fact that the petitioner attributed the delay in beginning construction to the board's refusal to issue a special permit upon the application of petitioner's lessee, which allowed the lessee to cancel its lease, established that there had been "substantial changes in circumstances * * * which cast doubt on the good faith of the applicant and the continued viability of the development of the applicant's property subject to variances". The board was of the view that these facts "require a de novo consideration of the validity of the applicant's request for variances and its entitlement thereto." The board also stated that the applicant "refused" to update the economic and statistical data

previously submitted to the board (which data had been the basis of the board's original findings, in 1972, "that the applicant had demonstrated practical difficulty in erecting a commercial building on the subject parcal *[sic]* and that the health, safety and welfare of the community and adjacent property owners and the orderly development of the community would be protected if the property was developed in conformity with the substitute or revised plans submitted by the applicant and if construction commenced within one year and proceeded diligently thereafter").

The board stated further: "Moreover, the current situation involves the additional 9/10 acre on which applicant wishes to construct 70 additional parking units. Applicant concedes, as indeed it must, that this additional parcel increases its costs but asserts that the property has no rental value to be considered in connection with its claim of hardship. This assertion strains the credulity of this Board. It defies logic and experience that applicant derives no economic return from the 9/10 acre parcel. Also significant is the fact that when the original variances were granted applicant represented that they were the minimum required. At least with respect to parking units this is no longer beyond some doubt. Certainly, applicant has failed to submit to this Board sufficient evidence respecting feasibility or economic hardship including the 9/10 acre parcel despite the fact that its applications relate inevitably to both parcels, the one for which variances have now expired and the one created by an illegal subdivision. Such evidence is per force required if for no other reason than applicant's claim that it cannot proceed with development of the larger parcel without the special permit for the smaller one."

An examination of the grounds set forth by the board makes it clear that there is no claim that, within the year, there had been any basic change in conditions which would support a finding that the grounds upon which the variances were originally granted are no longer valid in zoning terms. Neither the financial hardship nor the special physical and topographical factors upon which the board originally granted the variances have changed in any way. The only change demonstrated is that the Town of Greenburgh acquired the remainder of the Hall estate's 34 acres for a park and nature preserve and would have liked to have acquired with it the

nine tenths of an acre which petitioner had previously purchased. This does not meet the test established by *Matter of Overhill Bldg. Co. v Delany* (28 NY2d 449, 454) and *Matter of Davlee Constr. Corp. v Brooks* (21 Misc 2d 137). These cases require a showing that the public health, safety or welfare will be served by denying the variance. The imposition of the one-year time limit cannot serve to enable the board to use nonzoning purpose grounds to withdraw a variance which it had properly granted on a finding of hardship for, as the court said in *Matter of Goodwin (Town of Greenburgh)* (NYLJ, July 5, 1962, p 10, col 1): "The purpose for imposing a time limitation in the grant of a special permit or variance, it would seem, is to insure that in the event conditions have changed at the expiration of the period prescribed the board will have the opportunity to reappraise the proposal by the applicant in the light of the then existing facts and circumstances if the latter still desires to proceed. However, such a time limitation imposed for its own sake unrelated to the purposes of zoning has no apparent rationale and its strict application as the sole basis for a denial of an extension effects an unreasonable restriction upon the permission previously found to be warranted." Clearly, the unhappiness of the board at the sale by the executors of the Hall estate of a part of its land to the petitioner cannot serve as a legal basis for denying to the petitioner the extension of its variances.

It is also clear that the test for the granting of a special permit is by no means as stringent as that applied to the granting of a variance *(Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston,* 30 NY2d 238; *Matter of Knight v Bodkin,* 41 AD2d 413). The effort of the board to raise a claim that the petitioner's purchase of the estate land was the acquisition of a subdivision requiring planning board approval is a kind of pilpulism. It has no merit whatever and, in any case, the board cannot base its rulings on planning board compliance (see *Matter of Eriksen v Commerdinger,* 24 AD2d 934; *Matter of Costa [Hubbard],* NYLJ, March 5, 1965, p 20, col 1). Clearly, petitioner's application for a special permit was completely consistent with the standards for special permits generally, and with those set forth in section 65-11C of the Greenburgh Zoning Ordinance. The order should therefore be affirmed insofar as it is appealed from, and the appeal from the judgment should be dismissed as academic.

MARTUSCELLO, Acting P.J., COHALAN, DAMIANI and TITONE, JJ., concur.

Appeal from the judgment dismissed as academic, without costs or disbursements. The judgment was superseded by the order made on reargument.

Order dated November 24, 1975 affirmed insofar as appealed from, without costs or disbursements.