Dua v New York City Dept. of Parks & Recreation (2019 NY Slip Op 06154)





Dua v New York City Dept. of Parks & Recreation


2019 NY Slip Op 06154


Decided on August 20, 2019


Appellate Division, First Department


Kapnick, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 20, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.
Judith J. Gische
Barbara R. Kapnick
Ellen Gesmer
Peter H. Moulton,JJ.


110344/10 8291 

[*1]Diane I. Dua, et al., Plaintiffs-Respondents,
v
New York City Department of Parks and Recreation, et al., Defendants-Appellants.



Defendants appeal from the order and judgment (one paper) of the Supreme Court, New York County (Lucy Billings, J.), entered October 11, 2017, which, to the extent appealed from as limited by the briefs, denied defendants' motion for summary judgment granted plaintiffs' cross motion for summary judgment, with respect to the fifth cause of action and issued an injunction against defendants, and granted plaintiffs' cross motion for leave to amend the complaint.




Zachary W. Carter, Corporation Counsel, New York (Julie Steiner and Claude S. Platton of counsel), for appellants.
Phillips Nizer LLP, New York (Elizabeth Adinolfi and Kevin B. McGrath of counsel), for respondents.



KAPNICK, J.


Plaintiffs, several visual artists, as well as an unincorporated association of which some of them are members, challenge the New York City Department of Parks and Recreation's (DPR) "Expressive Matter Vending Rules" (EMV Rules) set forth in 56 RCNY § 1-05(b)(2)-(8) as invalid because they are inconsistent with the declared intent of Administrative Code of City of New York § 20-473 as set forth in Local Law No. 33 (1982), violate plaintiffs' free speech and equal protection rights under the New York Constitution (NY Const, art I, §§ 8, 11) and have a discriminatory effect on some vendors in violation of the New York State and City Human Rights Laws (Executive Law § 296[2]; Administrative Code § 8-107[4], [9]). We conclude that [*2]the EMV Rules are valid and that defendant is entitled to summary judgment dismissing all of plaintiffs' claims.
BACKGROUND
In New York City, the General Vendors Law, enacted in 1977, requires that all general vendors acquire licenses before selling nonfood goods or services in public spaces, such as City streets, sidewalks and parks (Administrative Code § B32-491.0; Administrative Code § 20-452 et seq.). Certain exceptions to those rules have been adopted, including exceptions for artists and other expressive matter vendors (EMVs). Expressive matter is defined as "materials or objects with expressive content, such as newspapers, books or writings, or visual art such as paintings, prints, photography, sculpture, or entertainment" (56 RCNY § 1-02).[FN1]
Administrative Code § 20-473 provides that while EMVs are exempt from licensing requirements applicable to general vendors, "nothing herein shall be construed to deprive the commissioner of the department of parks and recreation [DPR] of the authority to regulate [EMVs] in a manner consistent with the purpose of the parks and the declared legislative intent of this subchapter." With regard to legislative intent, the City Council has declared:
"[I]t is consistent with the principles of free speech and freedom of the press to eliminate as many restrictions on the vending of written matter [FN2] as is consistent with the public health, safety and welfare. The council further finds and declares that general vendors who exclusively vend written matter should be free from licensing requirements. It is further found and declared that general vendors who exclusively vend written matter with the aid of small portable stands should be exempted from restrictions on the time, place and manner of their vending activity insofar as such exemption does not constitute a [*3]threat [FN3] to the public health, safety or welfare" (Local Laws, 1982, No. 33 of City of New York § 1).
Following the enactment of Local Law No. 33, DPR has, at times, promulgated rules, other than the forbidden licensing requirement, for the purpose of regulating EMVs selling their wares in City parks. In the 1990s, DPR promulgated 56 RCNY § 1-05(b), prohibiting vendors, including EMVs, from operating without a "permit" within the parks. That permitting scheme was struck down as inconsistent with the statement of legislative intent in Local Law No. 33, which provides that EMVs should be free from licensing requirements (see Lederman v Giuliani, US Dist Ct, SD NY, 98 Civ 2024, McKenna, J., 2001, affd 70 Fed Appx 39 [2d Cir 2003]).
As relevant here, in March 2010, DPR published proposed revisions to the rules applicable to EMVs. It held a public hearing, and based on comments at the hearing as well as written comments, revised the proposed rules. The new rules became effective on July 19, 2010. Under the revised EMV Rules, while EMVs may sell in almost all City parks if they comply with certain requirements,[FN4] they are restricted in Union Square Park, Battery Park, High Line Park, and portions of Central Park below 86th Street, where they may only sell their items, on a first-come, first-serve basis, in certain designated areas, and only one vendor is allowed to sell at each spot. The EMVs may always sell in the nonenumerated areas, including other City parks and sidewalks. The designated spots are as follows:
"Expressive matter vendors may not vend in the following general areas unless they vend at the specifically designated spots for such vending on the accompanying maps and in compliance with all other applicable Department rules: "(i) Central Park at the following locations: (A) the perimeter of the park between East 85th Street and East 60th Street, including all sidewalks and plazas (B) the perimeter of the park between West 86th Street and West 60th Street, including all sidewalks and plazas (C) all of Central Park South, including all sidewalks and plazas (D) Wien Walk and Wallach Walk, (E) pedestrian pathways parallel to East Drive between Grand Army Plaza and the Center Drive, (F) Grand Army Plaza, (G) Pulitzer Plaza, and (H) Columbus Circle.
"(ii) Battery Park, including all perimeter sidewalks.
"(iii) Union Square Park, including all perimeter sidewalks.
"(iv) Elevated portions of High Line Park." (56 RCNY 1-05 [b][3]).
The "accompanying maps" referenced in section 1-05(b)(3) detail the designated spots. For example, there are 68 spots for EMVs in the designated portions of Central Park (including 28 outside of the Metropolitan Museum of Art); nine spots for EMVs in Battery Park; 18 spots for EMVs in Union Square Park and five spots on the High Line. In addition, during the review process prior to adoption of the EMV Rules, and in response to submitted comments, the Parks Department added 40 spots in Union Square Park for EMVs, which are available on Sundays, Tuesdays and Thursdays, days that the longstanding Greenmarket is not operating there.
Soon after the EMV Rules were announced, artists who are EMVs in City parks, including some of the plaintiffs in this case, brought two actions in federal court seeking to enjoin enforcement of the rules on constitutional grounds. Because the cases were related, they were decided together under Lederman v New York City Dept. of Parks & Recreation (US Dist Ct, SD NY, 10 Civ 4800, Sullivan, J., 2010). In its memorandum and order, the federal court denied the plaintiffs' motions for a preliminary injunction, finding that the revisions "appear to be reasonable, content-neutral restrictions on time, place, and manner that are narrowly tailored to advance a significant government interest while leaving open ample alternative channels for the expressive activity" (id.). On August 4, 2010, plaintiffs commenced this declaratory judgment action, which alleges that the EMV Rules violate their free speech and equal protection rights under the New York Constitution; are inconsistent with the declared legislative intent underlying Administrative Code § 20-473; and that the spot designations have a discriminatory effect on those vendors for whom it is difficult, whether due to age, gender, or disability, to compete to secure a spot, in violation of the State and City Human Rights Laws. They also sought preliminary injunctive relief.
In a December 2010 order, Supreme Court denied plaintiffs' motion for a preliminary injunction, finding the EMV Rules "to be a reasonable content-neutral restriction on time, place and manner that are narrowly tailored to support a rational basis for the Legislative action" (Dua v New York City Dept. of Parks & Recreation, 2010 NY Slip Op 33666[U], *7-8 [Sup Ct, New York County 2010]). In May 2011, this Court affirmed that order, finding that the rules were content neutral, part of a comprehensive scheme governing time, place, and manner for all vendors, and that they addressed the City's significant interest in preserving and promoting the scenic beauty of its parks, providing sufficient areas for recreational uses, and preventing congestion in park areas and on perimeter sidewalks, in response to valid concerns relating to the increase in the number of such vendors (84 AD3d 596 [1st Dept 2011]).
In February 2012, the City moved for summary judgment, arguing that, as found in the earlier preliminary injunction orders, the EMV Rules are valid time, place, and manner restrictions, and thus not constitutionally infirm; that the rules are not prohibited by Administrative Code § 20-473; and that they do not implicate the State or City Human Rights Laws. While that motion was pending, the City was granted summary judgment dismissing the complaint in the federal Lederman action, with the district court concluding that the EMV Rules are constitutional (901 F Supp 2d 464 [SD NY 2012]). That decision was affirmed by the Second Circuit (731 F3d 199 [2d Cir 2013], cert denied 571 US 1237 [2014]).
In July 2014, having received lengthy adjournments from the court, plaintiffs opposed defendants' summary judgment motion, and cross-moved for summary judgment on their claims and for leave to amend their complaint to add a separation of powers claim.
By order dated September 20, 2017 (59 Misc 3d 633 [Sup Ct, NY County 2017]), the court granted defendants' motion only to the extent of dismissing the sixth cause of action alleging that the EMV Rules are unconstitutionally vague, and otherwise denied the motion. It granted plaintiffs' cross motion for summary judgment to the extent of declaring that the EMV Rules violate Administrative Code § 20-473, and thus enjoined enforcement of the Rules. The [*4]court also denied both motions for summary judgment on plaintiffs' free speech, equal protection, and discrimination claims, and granted plaintiffs leave to amend the complaint to add a separation of powers claim.
Supreme Court held that the EMV Rules are inconsistent with the declared legislative intent of Local Law No. 33 to eliminate as many restrictions as possible on vending expressive matter, because defendants have not claimed that the regulations were intended to promote health, safety or welfare, and that the rules add restrictions on EMVs rather than eliminating them (59 Misc 3d at 644). With respect to the free speech claim, the court found that although the City has a significant interest in addressing concerns about congestion, aesthetics, and competing park uses, "defendants present no evidence that EMVs impacted those concerns to justify regulation" (id. at 639). While the court then addressed the evidence that had been presented by the City to demonstrate congestion in the regulated parks, it concluded that even accepting the City's accounts of increased park congestion, it presented "no evidence of EMVs' impact on park aesthetics or interference with conflicting uses of park space" (id. at 640). However, the court also denied plaintiffs' crossmotion for summary judgment on the free speech claim, finding that their evidence failed to establish defendants' lack of a substantial interest in implementing the EMV Rules (id. at 641).
With respect to the claim alleging that the EMV Rules facially violate equal protection guarantees because they limit the number of EMVs in particular areas, the court found that the regulation's classification of this group is impermissible if it does not "further a legitimate, articulated governmental purpose" (id. at 642). It concluded that defendants' evidence does not support their concerns about EMVs (id.), but also found that plaintiffs' evidence failed to establish "defendants' lack of a legitimate or compelling governmental interest" (id.). It denied both defendants' motion and plaintiffs' cross motion on that issue.
Regarding plaintiffs' contention that the regulations are void for vagueness, the court noted that this Court has already rejected that claim in the appeal of the denial of plaintiffs' motion for a preliminary injunction (84 AD3d at 598), and that the same factual record that was before this Court was presented on the motions for summary judgment. Thus, the motion court reasoned that this Court's holding was controlling precedent.
Supreme Court denied both motions for summary judgment on the violation of the State and City Human Rights Laws claims, finding that although plaintiffs did not offer any opposition to dismissal of those claims, defendants had failed to show that plaintiffs have not been denied a public accommodation for discriminatory reasons (id. at 645).[FN5]
Finally, with respect to plaintiffs' cross motion to amend their complaint to add a violation of separation of powers claim, the court found that plaintiffs had demonstrated merit to the claim under the factors set forth in Boreali v Axelrod (71 NY2d 1 [1987]) and its progeny, and permitted plaintiffs to amend their pleading (id. at 645-648). DISCUSSION
I. The EMV Rules do not conflict with the City Council's legislative intent, as expressed in Local Law No. 33 of 1982.
Supreme Court erred in declaring that the EMV Rules conflict with the City Council's intent regarding expressive matter. The Council has granted authority to DPR to regulate expressive matter vending consistent with public health, safety and welfare. The EMV Rules promote those concerns because they advance the City's significant interest in preserving the [*5]parks' scenic beauty, permitting the recreational use of parks for strolling and other activities and preventing congestion. We reject the notion adopted by the Supreme Court that the EMV Rules conflict with the City Council's legislative intent to eliminate as many restrictions as possible for EMVs simply because there are some restrictions placed on EMVs in specific, discrete areas where DPR has determined those restrictions to be necessary. To the contrary, the City Council has itself required that EMVs comply with general restrictions relating to the size and placement of their vending tables (see Administrative Code §§ 20-465(a)-(f),(k)-(q), 20-473). The City Council has expressly recognized that DPR may further regulate expressive matter on park property (Administrative Code § 20-473) consistent with DPR's mandate under the City Charter to manage and care for the parks, and to maintain their beauty and utility (see New York City Charter § 533).
Furthermore, the EMV Rules are in stark contrast to the previous licensing requirement that, as noted by the Second Circuit, was "a de facto bar preventing visual artists from exhibiting and selling their art in public areas in New York (Bery, 97 F3d at 697). There is no such bar here. Rather, defendants have demonstrated that the EMV Rules' carefully targeted limitations were properly enacted based on observations, experience and judgment in how the increase of expressive matter vending has affected parkland. Supreme Court incorrectly rejected the proof proffered by defendants to show that the EMV Rules are a valid exercise of DPR's management of the parks in response to the rapid proliferation of expressive matter vending in certain areas.
The Declaration of former DPR Assistant Commissioner Jack Linn details the specific conditions necessitating the spot designations in each park. For example, Linn explains that the 68 designated vending spots in Central Park below 86th Street were chosen by the Parks Department after considering the volume of visitors to Central Park each year (over 37 million, more than 70 percent of whom enter the park at or below 86th Street); and the need to maintain the aesthetic integrity of, and access to, park features, including numerous historical monuments and public art exhibits, the subway entrances in the Park near Grand Army Plaza and Columbus Circle, and the numerous benches and trees along the park side of the perimeter sidewalk.
Similarly, Union Square Park's specific vending locations were designated by the Parks Department after consideration of the volume of visitors to the Park (up to 200,000 on a summer day); and the need to maintain the aesthetic integrity of, and access to, park features including subway entrances, the "Spanish Steps," monuments and sculptures; allow the operation of the farmer's market; and maintain space for political rallies and other special events.
Likewise, Battery Park's vending locations take into account the over four million people who visit Battery Park every year; the bus, subway and ferry stops located in and around the park; the numerous monuments in the park, including the historic Castle Clinton; and the locations where vendors have attempted to sell in the past.
Moreover, the designated vending locations in High Line Park are situated so as to not unduly interfere with the flow of visitors, viewing areas and plants in that narrow, elevated, heavily landscaped park.
In sum, defendants have demonstrated that the EMV Rules are consistent with Local Law No. 33 and Administrative Code § 20-473 in that they promote the public health, safety and welfare in the designated parks.
II. The EMV Rules do not violate vendors' rights under the New York Constitution
As we noted in the prior appeal, plaintiffs failed to show a likelihood of success on the merits of their constitutional challenges:
"The [R]evised [R]ules respond to Parks Department concerns that, since 2001, expressive matter vendors have tripled. The general restrictions applicable to all vendors [*6]were no longer sufficient to balance the vending of expressive matter with the use of parks by the general public. The [R]evised [R]ules provide open, ample alternative means of communication since they only apply to four parks. Expressive matter vendors may operate at any other city park, subject only to general restrictions. Thus, the [R]evised [R]ules satisfy the narrow tailoring requirement of promoting a substantial government interest that would be achieved less effectively absent the regulation" Dua, 84 AD3d at 597-598 [internal citations and quotation marks omitted]).
Concerning the protection of free speech afforded by the New York Constitution (art I, § 8), the EMV Rules are content-neutral restrictions, in that "they are justified without reference to the content of the regulated speech and relat[e] only to the time, place, and manner of expression" (Matter of Town of Islip v Caviglia, 73 NY2d 544, 557 [1989]). Thus, they "are valid if the governmental interest to be achieved outweighs the resulting interference with free expression" (id.). Defendants have shown that the EMV Rules are " no broader than needed' for the intended purpose" (id. at 560, quoting People ex rel. Arcara v Cloud Books, 68 NY2d 553, 558 [1986]) and that there are ample alternative means for EMVs to sell their wares (Islip at 560; see also Matter of Rogers v New York City Tr. Auth., 89 NY2d 692, 701 [1997]; Dua, 84 AD3d at 597).
The record, which is not meaningfully different now than when it was last before this Court in 2011, establishes that the EMV Rules are an appropriate response to demonstrated concerns about expressive matter vending in specific city parks. As the federal court held in Lederman, the EMV Rules "bear the hallmarks of a carefully considered attempt to advance the significant government interest without placing undue burdens on expressive matter vendors" (901 F Supp 2d at 477 [internal quotation marks omitted]).
While plaintiffs are correct that the language of the New York Constitution's free speech clause is more expansive than that contained in the First Amendment of the US Constitution (see e.g. Immuno AG. v Moor-Jankowski, 77 NY2d 235, 249 [1991] [the protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the Federal Constitution]), that does not automatically mean that the New York Constitution will necessarily be interpreted to confer greater rights than those conferred by the First Amendment in every case (see e.g. Courtroom Tel. Network LLC v State of New York, 5 NY3d 222, 231 [2005] [no right under either the First Amendment or article I, § 8 to televise a trial - - "[w]hile we have in certain circumstances interpreted article I, § 8 more broadly than its federal counterpart . . . we decline to do so here."]; Matter of Johnson Newspaper Corp. v Melino, 77 NY2d 1, 8 [1990] [no public right to attend professional disciplinary hearing under either the Federal or State Constitution]).
Defendants have shown that the protection of free speech contained in the New York Constitution is not violated by the EMV Rules, and plaintiffs have not raised any issue of fact in that regard. While plaintiffs argue that it is purely commercial activities, such as the Greenmarket and the Winter Village, and not the EMVs, that contribute to congestion in the parks, we agree with the assessment of the federal court on this argument:
"That the City tolerates heightened congestion in some circumstances neither requires it to tolerate such congestion at all times nor suggests that its other congestion-reducing measures are pretextual. Furthermore, the Revisions were promulgated not only to reduce congestion, but also to address aesthetic concerns, to prevent interference with other users' enjoyment of the parks, and to allow for an array of activities to take place in the parks"
(Lederman v NY City Dept. of Parks & Rec., 901 F Supp 2d at 476 [internal citations and quotation marks omitted]).
While "[a]rguments can be advanced that different techniques should be used to address the problem, . . . that is not to say that they are constitutionally required", and suggesting alternatives "amounts to nothing more than a disagreement . . . over how much corrective action is wise and how best it may be achieved" (Town of Islip, 73 NY2d at 560). Thus, we conclude that defendants are entitled to summary judgment on the free speech claim.
Similarly, there is no issue of fact as to whether the EMV Rules violate plaintiffs' equal protection rights. As noted by the federal court in Lederman, which had substantially the same record before it:
"[T]he Court finds that the Revisions fall well within the parameters of the First Amendment. Accordingly, the Revisions are subject only to rational basis review for equal protection purposes. Under rational basis review, Plaintiffs' Equal Protection claims must fail as a matter of law, because Defendants have met the low bar in establishing that the Revisions are rationally related to a legitimate government interest,' namely, promoting the use and enjoyment of public parks" (901 F Supp 2d at 480).
Plaintiffs' equal protection claim centers around their assertion, disputed by defendants, that the setback rules impose greater restrictions than permits issued by the Parks Department to pure commercial park vendors, such as food and souvenir vendors. However, as explained by defendants, the EMV Rules, including the setback rules, are necessary for the very reason that, unlike food and souvenir vendors, EMVs do not need to obtain permits from DPR, whereas the general vendors must obtain permits that specify a location where the activity can occur and the specific size of the cart which may be used. Plaintiffs only have to comply with generally applicable setback requirements. There is no proof that they are treated disparately. In fact, as this Court noted in the prior appeal:
"While the Revised Rules allow expressive matter vending at sites and times when food or general vending is allowed, the record reveals that the Parks Department designated 68 sites for expressive matter vending in and around Central Park below 86th Street and authorized only 36 food and souvenir carts to operate in that area" (Dua, 84 AD3d at 598).
In sum, the record supports defendants' contention that there are many more opportunities for expressive matter vending than food and souvenir vending in the designated City parks. There are no triable issues of fact as to whether the EMV Rules deny plaintiffs equal protection rights.
III. Defendants are entitled to summary judgment dismissing the discrimination claims under the State and City Human Rights Law
Supreme Court held that plaintiffs' cross motion for summary judgment presented no support for these discrimination claims and that plaintiffs did not offer any opposition to defendants' motion for dismissal of those claims. Yet, the court declined to grant summary judgment to either plaintiffs or defendants. Plaintiffs have not appealed that determination. Defendants, in appealing, point out that although this Court indicated on the prior appeal that the record was not sufficiently developed regarding the discrimination claims (84 AD3d at 598), the discovery process since has not yielded any evidence to support plaintiffs' claims of disparate treatment. They also assert that even if plaintiffs could demonstrate that the EMV Rules have a disparate impact on women, older vendors, or disabled individuals, their claims would still fail because under both the City and State Human Rights laws, which employ a burden-shifting [*7]analysis, defendants have demonstrated a legitimate, nondiscriminatory reason for the EMV Rules and plaintiffs have not shown those reasons to be false or pretextual (see e.g. Bennett v Health Mgt. Sys., Inc., 92 AD3d 29, 35-36 [1st Dept 2011] lv denied 18 NY3d 811 [2012] [City Human Rights Law]; Ferrante v American Lung Assn., 90 NY2d 623, 629 [1997] [State Human Rights Law]). Plaintiffs have not addressed or contested in this appeal defendants' position regarding the discrimination claims. Accordingly, those claims should be dismissed. IV. Supreme Court erred in granting plaintiffs leave to amend to add a separation of powers claim
Although leave to amend is within the discretion of the court, where the proposed amendment lacks merit, leave should be denied (see Britz v Grace Indus., LLC, 156 AD3d 533 [1st Dept 2017], lv dismissed 32 NY3d 946 [2018]; Eighth Ave. Garage Corp. v H.K.L. Realty Corp., 60 AD3d 404, 405 [1st Dept 2009], lv dismissed 12 NY3d 880 [2009]). The EMV Rules, which are directly related to the management of the City's parks, fall squarely within DPR's broad rulemaking authority, and DPR's exercise of its delegated authority in adopting the EMV Rules does not run afoul of any of the factors set forth in Boreali v Axelrod (71 NY2d 1 [1987], supra). The EMV Rules were promulgated based solely on considerations of park management and not any impermissible economic or social factors (id. at 11-12); they filled in details of a broad policy rather than writing "on a clean slate, creating [a] comprehensive set of rules without benefit of legislative guidance" (id. at 13); DPR did not intrude on legislative prerogatives regarding policy matters (id.); and the EMV Rules were promulgated based on DPR's specialized expertise in managing the parks (id. at 14).
As the Court of Appeals noted in Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn. (25 NY3d 600, 612 [2015]) "[the Boreali] factors are not mandatory, need not be weighed evenly, and are essentially guidelines for conducting an analysis of an agency's exercise of power." Here, as in that case, we conclude that DPR "engaged in proper rulemaking, rather than improper legislating" (id. at 613). Thus, plaintiffs should not have been permitted to amend their complaint.
Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Lucy Billings, J.), entered October 11, 2017, which, to the extent appealed from as limited by the briefs, denied defendants' motion for summary judgment, granted plaintiffs' cross motion for summary judgment with respect to the fifth cause of action and issued an injunction against defendants, and granted plaintiffs' motion for leave to amend the complaint, should be reversed, on the law, without costs, plaintiffs' cross motion to amend the complaint and for summary judgment on the fifth cause of action denied, defendants' motion for summary judgment dismissing the complaint granted, and the injunction vacated. The Clerk is directed to enter judgment accordingly.
All concur.
Order and judgment (one paper), Supreme Court, New York County (Lucy Billings, J.), entered October 11, reversed, on the law, without costs, plaintiffs' cross motion to amend the complaint and for summary judgment on the fifth cause of action denied, defendants' motion for summary judgment dismissing the
complaint granted, and the injunction vacated. The Clerk is directed to enter judgment accordingly.
Opinion by Kapnick, J. All concur.
Renwick, J.P., Gische, Kapnick, Gesmer, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 20, 2019
DEPUTY CLERK



Footnotes

Footnote 1: When plaintiffs commenced this lawsuit in 2010, "entertainment" was not included in the definition of expressive matter. The definition was amended effective May 8, 2013 to include "entertainment."

Footnote 2:Local Law No. 33 exempted only vendors of written material. After artists challenged the failure to include them in the exemption on constitutional grounds and the Second Circuit held that the failure to exempt the artists from the licensing requirement violated their First Amendment rights and the Equal Protection Clause (Bery v City of New York, 97 F3d 689 [2d Cir 1996], cert denied 520 US 1251 [1997]), the City of New York consented to a permanent injunction prohibiting the enforcement of § 20-473 against any person who "hawks, peddles, sells, leases or offers to sell or lease, at retail, any paintings, photographs, prints and/or sculpture, either exclusively or in conjunction with newspapers, periodicals, books, pamphlets or other similar written matter, in a public space" (Permanent Injunction on Consent dated Oct. 21, 1997, Bery v City of New York, No. 94 Civ. 4253 (MGC) [SD NY Oct. 30, 1997]). 56 RCNY § 1-02 was amended to include "visual art such as paintings, prints, photography, sculpture, or entertainment" in the definition of expressive matter.

Footnote 3:The word "threat" is found in Local Law No. 33, but not in Administrative Code § 20-473.

Footnote 4: Those requirements include the following: display stands must allow a clear pedestrian path and must be five feet away from a tree, street, or park furniture and 50 feet away from a monument; a vendor's goods cannot lean against any park furniture or plants; and the vending activity cannot block anyone from using park furniture or take place over any ventilation grill, manhole, or subway access grating (56 RCNY § 1-05[b][4]-[8]).

Footnote 5: The court noted record evidence that "at least one plaintiff is over age 40 and several are women" (id. at 645).