PHILANZ OLDSMOBILE, INC., Appellant, v GERALD KEATING et al., Constituting the Zoning Board of Appeals of the Town of Irondequoit, Respondents.

Fourth Department, April 9, 1976

*Salamone & Aloi (Robert Lunn* of counsel), for appellant.

*Thomas Schnurr* for respondents.

MAHONEY, J. In this CPLR article 78 proceeding, petitioner appeals from an order denying its application to set aside a determination by respondent, zoning board of appeals, which denied petitioner's request for a zoning ordinance variance and/or special exception permit relative to certain freestand-

ing signs maintained on its premises. Petitioner is the owner of a business located in the Town of Irondequoit where, for the past 18 years, it has conducted an auto sales agency of new and used automobiles together with service and repair facilities. The property is located in an area zoned for commercial business. Involved in this proceeding are several accessory business signs installed by petitioner in 1957 or 1958. In 1964 the Zoning Law of the Town of Irondequoit was amended by the enactment of Local Law No. 5 of 1964. Provision is made under article VI thereof governing size, location, number and other requirements of accessory business signs in commercial districts. It is also provided under article VI (§ 55-10, subd B, par [7]), that pre-enactment nonconforming signs were to be either brought into conformity or removed within three years of the enactment date of the ordinance, i.e., December 28, 1964. In addition, under article VI (§ 55-10, subd B, par [5]), the respondent zoning board of appeals was authorized to grant exceptions to the size or height limitations of signs prescribed by the ordinance, "provided that they find that such exceptions will not adversely affect adjacent property and will not constitute a hazard", with issuance of a temporary or conditional permit being authorized for "not more than five (5) years".

The operative facts may briefly be summarized as follows. It is conceded that the three freestanding signs of petitioner here involved are in violation of the permitted number, size and height limitation requirements of the ordinance. The record also indicates that the signs are in violation of the ordinance setback location requirements. Despite the enactment of the ordinance in question in 1964, affirmative enforcement by the municipality was not undertaken until 1974, as a result of which action petitioner applied to respondent zoning board of appeals for either a variance or a special exception permit to continue maintenance of its nonconforming signs for an additional five-year period. At the hearing conducted by respondent in connection with the said application, petitioner offered proof that the replacement costs of conforming signs in lieu of the signs in issue would amount to $28,500, and removal costs would approximate an additional $1,300. Petitioner also offered proof that the signs had an original useful life of 30 to 40 years, although it was conceded that the cost of the signs had been fully depreciated for income tax purposes and might have a remaining useful life of another 12

to 15 years. Petitioner expressed its desire and intention to comply with the zoning ordinance sign requirements but sought a reasonable period of up to five years to recoup some of its investment cost of the signs and to arrange for replacement with signs substantially in conformity with requirements of the ordinance, such signs being available through its auto sales franchisor on an economically attractive lease basis.

In denying petitioner's application for both a variance and a special exception permit to extend its time to remove the signs, respondent held that (a) the applicant failed to demonstrate proof of hardship but, rather, effectively demonstrated that by complying with Oldsmobile's leased sign program and erecting a new sign in substantial compliance with the ordinance, a savings would accrue to the applicant; (b) no need was established by the applicant for proliferation of excessively sized signs to identify its business; (c) the signs did not contribute to the welfare and convenience of the general public; (d) the sign adversely affected neighboring properties in that they divert attention from legal signs, block vision, and aesthetically degrade and cheapen the area; (e) applicant had not attempted to avail itself of legal signs to identify its place of business; (f) the concentration of signs and their excessive size creates a traffic hazard and is injurious to public safety; and (g) the visual inspection of the premises by the board members reinforced the above findings. Petitioner thereafter commenced this article 78 proceeding to set aside such determination as being arbitrary, capricious and an abuse of discretion. It is from Special Term's order sustaining respondent's determination that petitioner appeals, basically urging that denial of additional time to petitioner to amortize its nonconforming signs constituted an abuse of discretion by respondent.

It is to be preliminarily noted, considering the alternative request of petitioner for either a variance or issuance of a special exception permit, that a distinction exists in determining the propriety of respondent's determination. As observed in *Matter of Knight v Bodkin* (41 AD2d 413, 417): "Where a zoning ordinance, such as here, authorizes a special permit subject to administrative approval, what is involved is a use which is permitted rather than proscribed by the zoning regulations and for that reason there is imposed upon the zoning board and the applicant a duty and burden entirely different than an application for a variance *(Matter of North*

*Shore Steak House v. Board of Appeals of Inc. Vil. of Thomaston,* 30 N Y 2d 238; 3 Anderson, American Law of Zoning, §§ 15.01, 15.11). In the latter case, the zoning board's power is to be sparingly exercised and only in rare instances, based upon unique circumstances and a showing of hardship. No such proof is required for a special permit. The issuance of such a permit is a duty, imposed upon the zoning board once it is shown that the proposed use meets the standards prescribed by the ordinance [citations omitted]."

The Court of Appeals also stated in *Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston* (30 NY2d 238, 244): "The burden of proof on an applicant for a special exception permit is much lighter than that required for a hardship variance *(Verona v. West Caldwell,* 49 N. J. 274; [3] Anderson [American Law of Zoning,] § 15.21). It does not require the applicant to show that it has been denied any reasonable use of the property but only that the use is contemplated by the ordinance subject only to 'conditions' attached to its use to minimize its impact on the surrounding area."

On the record here presented, petitioner has failed to meet its burden for either a variance or issuance of a special exception permit.

It is now established that the State and its political subdivisions may regulate the erection and maintenance of outdoor advertising signs under the police power *(People v Goodman,* 31 NY2d 262; *Matter of Cromwell v Ferrier,* 19 NY2d 263; *Rochester Poster Adv. Co. v. Town of Brighton,* 49 AD2d 273; see, also, *Railway Express v New York,* 336 US 106; *New York State Thruway Auth. v Ashley Motor Ct.,* 10 NY2d 151; 7 McQuillin, Municipal Corporations, §§ 24.380-24.388). It is equally well settled that aesthetics is a valid subject of legislative concern and that reasonable legislation designed to promote governmental interest in preserving the appearance of the community represents a valid and permissible exercise of the police power *(People v Goodman, supra; People v Stover,* 12 NY2d 462). However, the fact that aesthetics is a valid legislative concern, as is the safety, health and welfare of the community, does not in and of itself validate all legislative enactments which seek to advance those interests. Any regulation under the police power must satisfy the test of reasonableness *(Matter of Tyson v Tyler,* 24 NY2d 671; *People v Bunis,* 9 NY2d 1; *Trio Distr. Corp. v City of Albany,* 2 NY2d

690). In the instant case petitioner has not challenged the constitutionality of the ordinance per se (cf. *People v Goodman, supra; Matter of Cromwell v Ferrier, supra)*, but rather, contests the application of the regulatory scheme to its premises and the manner in which the implementation is sought to be carried out. The inquiry is thus directed as to whether the method of implementation of this ordinance is reasonably related to the community's policy sought to be promoted and is not unduly oppressive upon petitioner *(Matter of Tyson v Tyler, supra; People v Bunis, supra)*.

In assessing the reasonableness of this policy and its implementation, it is proper to consider the surrounding area of the regulated community *(Matter of Cromwell v Ferrier, supra)*. Regulations in the name of aesthetics must also bear substantially on the economic, social and cultural patterns of the community *(People v Goodman,* 31 NY2d 262, 266, *supra)*. Here the underlying bases for the implementation are not solely aesthetic, although the regulation against excessively sized signs does evidence that concern. It is significant that the respondent zoning board of appeals expressed concern for traffic safety as well as the economic impact upon other businesses in the immediate area which have complied with the regulation. The area immediately surrounding the subject premises is heavily commercial with many independent businesses of diverse nature. It would appear that petitioner is the only business in this particular area that has failed to comply with the sign limitations established by the ordinance. The ordinance itself is regulatory, as opposed to prohibitory, and expressly permits the display of advertising signs up to 32 square feet with a three-year abatement period for nonconforming signs. The ordinance having become effective in 1964, the abatement period for these signs would have expired in 1967. However, between 1967 and the commencement of this proceeding in 1974, the town, as noted, did not take affirmative action to enforce its ordinance. Thus, petitioner and all other property owners who displayed nonconforming signs actually had a 10-year abatement period. Such a lengthy period of time between enactment, enforcement and implementation unquestionably accorded petitioner a reasonable period of time to amortize his sign investment and make future plans *(Matter of Harbison v City of Buffalo,* 4 NY2d 553; *Rochester Poster Adv. Co. v Town of Brighton,* 49 AD2d 273, *supra)*. Since there is no question that for income tax

purposes the signs had been fully depreciated by petitioner, its financial loss is nonexistent, other than the relatively minimal removal expense estimated at $1,300. Such amount cannot be deemed to outweigh the advantage to the public in terms of more complete and effective zoning accruing from the cessation of such continued use by petitioner of its nonconforming signs *(People v Miller,* 304 NY 105, 108).

Upon such analysis, the town's policy as expressed in its ordinance regulating advertising sign displays and its enforcement and implementation thereof was in all respects reasonable. Respondent's determination in denying petitioner's request for a variance, therefore, cannot be said to be arbitrary, capricious or an abuse of discretion.

Nor is such conclusion affected by the failure of the town to enforce its ordinance sign provisions between the years 1967 and 1974. Petitioner's contentions that such failure constitutes laches and estoppel or alternatively requires that the three-year abatement period commence in 1974 are without merit. There is no evidence in this record that the town induced petitioner to continue the maintenance of its nonconforming signs or induced it to make alternative plans. Nor is there evidence of any activity by the town which prejudiced the petitioner. The defense of laches and estoppel is based upon the principle that one party either by delay or some other affirmative course of conduct has caused some prejudice to the other in reliance thereon (Pomeroy, Equity Jurisprudence [4th ed], § 1440 *et seq).* Mere acquiescence could not make illegal acts legal. The undisputed delay in enforcement has not been shown in any manner to have worked a detriment upon the petitioner. To the contrary, the delay in enforcement has afforded the petitioner many years of profitable use (see *Marcus v Village of Mamaroneck,* 283 NY 325; *Rapasadi v Phillips,* 2 AD2d 451).

As for respondent's denial of a special exception permit, the authority therefor accorded by the ordinance is specifically limited to nonconformance as to size or height limitation. The record shows that petitioner's signs not only exceeded size and height limitations but also the number of signs and prescribed setback limitations. Upon such facts petitioner's application fails to qualify or meet the requisite standard warranting issuance of the special exception permit sought.

The judgment should be affirmed.

MARSH, P. J., MOULE, CARDAMONE and GOLDMAN, JJ., concur.

Judgment unanimously affirmed, without costs.