**AVR, INC., Appellant,**

v.

**CITY OF ST. LOUIS PARK, Respondent.**

No. C7–98–516.

Court of Appeals of Minnesota.

Oct. 20, 1998.

Review Denied Dec. 15, 1998.

Gerald S. Duffy, William Christopher Penwell, Anthony J. Gleekel, Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, (for appellant).

Roger N. Knutson, Thomas M. Scott, Campbell Knutson, P.A., Eagan, (for respondent).

Considered and decided by KALITOWSKI, P.J., and AMUNDSON and WILLIS, JJ.

## OPINION

WILLIS, Judge.

Appellant AVR, Inc., challenges the district court's order granting summary judgment to respondent City of St. Louis Park, claiming that the city's zoning ordinance that establishes a two-year amortization period for appellant's preexisting nonconforming use is unreasonable and violates appellant's right to equal protection of the laws. We affirm.

## FACTS

AVR owns and operates a ready-mix concrete plant in the City of St. Louis Park. The plant was constructed in 1954. In 1959, the city passed a zoning ordinance permitting ready-mix plants in the area of the city zoned for industrial use but only pursuant to a special use permit. The city did not grant a special use permit to the then-owners of this ready-mix plant, but rather classified the plant as a preexisting nonconforming use, because it was within 400 feet of a residential district.

In 1973, the city amended its zoning code to eliminate ready-mix and concrete block plants as permitted uses in the city. AVR purchased the ready-mix plant in 1974 for $260,000. In May 1980, the city adopted a new comprehensive plan and put AVR on notice that the city intended to phase out the plant and rezone the site for commercial or office use or "as a second choice high density residential use." AVR commenced a declaratory judgment action seeking to invalidate the 1973 zoning ordinance on the ground that it wrongfully eliminated ready-mix plants as permitted uses in industrial zones. The district court declared the ordinance void as applied to AVR, and the city appealed. This court concluded that because the plant was not a public nuisance or a nuisance per se, the city could not legislate it out of existence. *Apple Valley Red–E–Mix v. City of St. Louis Park,* 359 N.W.2d 313, 315 (Minn.App.1984), *review denied* (Minn. Mar. 21, 1985).

In 1990, the city adopted another new comprehensive plan, which provides that, in the area where the AVR plant is located,

[h]eavy industrial uses including a concrete ready mix plant and outdoor storage of heavy equipment are to be phased out, and the sites are to be used for high density residential use.

St. Louis Park, Minn., Comprehensive Plan 1990–2010 § 16, at 16–5 (1990). In 1992, the city rezoned AVR's property from I–4 Industrial to R–4 Multifamily Residential. The ordinance provides that the city council

shall by ordinance amend the Zoning Ordinance to establish an amortization period for individual land uses not permitted in the City. The amortization period shall commence upon publication of the ordinance establishing the length of amortization period.

St. Louis Park, Minn., Code of Ordinances § 14:7–4(D)(4) (1992). The 1992 ordinance required the owners of all properties "that contain a use not permitted in any zoning district [to] register their non-conforming use with the City" within one year of the adoption of the ordinance. *Id.* § 14:7–4(B). The ordinance also required the zoning administrator to meet with such property owners, review each registration application, and determine a reasonable amortization period for each nonconforming use. In determining the length of a reasonable amortization period, the zoning administrator was to consider, at a minimum, the following factors:

a. Information relating to the structure located on the property;

b. Nature of the use;

c. Location of the property in relation to surrounding uses;

d. Description of the character of and uses in the surrounding neighborhood;

e. Cost of the property and improvements to the property;

f. Benefit to the public by requiring the termination of the non-conforming use;

g. Burden on the property owner by requiring the termination of the non-conforming use;

h. The length of time the use has been in existence and the length of time the use has been non-conforming.

*Id.* § 14:7–4(D)(2). The city council accepted AVR's registration of the plant property as substantially complete on June 29, 1995.

On July 11, 1995, the city council and planning commission held a joint public hearing for the purpose of adopting an amortization ordinance relating to the AVR plant. City staff presented to the council and planning commission the report and recommendation required by the 1992 ordinance. AVR presented information supporting its position that the plant has an indefinite remaining physical life.

On October 2, 1995, the city amended its zoning ordinance by adopting the following provision:

The reasonable amortization period applicable to the ready-mix facility owned and operated by [AVR] * * * shall be two (2) years, commencing upon publication of this ordinance. At the conclusion of the two-year amortization period, [AVR's] nonconforming ready-mix use shall terminate and cease to operate.

*Id.* § 14:7–4.1 (1995). In conjunction with the adoption of section 14:7–4.1, the city council adopted a resolution that contained 42 findings of fact supporting the ordinance and that stated:

The Minnesota Supreme Court has directed, in the *Naegele Outdoor Advertising Co. of Minn. v. Village of Minnetonka* decision, that any amortization period must be "reasonable." Courts in other jurisdictions have identified at least seven (7) factors by which the reasonableness of an amortization period may be evaluated. The St. Louis Park Code of Ordinances incorpo-

rates those specific factors in its Amortization Ordinance.

St. Louis Park, Minn., Res. No. 95–131, ¶ 3 (1995) (citing St. Louis Park, Minn., Code of Ordinances § 14:7–4(D)(2)(a–h) (1992)). The city addressed the factors identified in its amortization ordinance in making findings to support its determination of the length of the amortization period for AVR's plant.

The city also considered the useful life of the plant. To assist it in making that determination, the city retained an accounting firm and a real estate appraisal firm. The accounting firm advised the city that, based on generally accepted accounting principles, the plant's "useful life expired no later than 1994" and that AVR had not only recovered its investment but also had earned a return of approximately 560 percent on its investment. *Id.* ¶ 37. The city council found that

[b]ased upon the expert opinions of Arthur Andersen and Patchin, the age of [AVR's] St. Louis Park Facility, AVR's proposal to the City nine years ago to replace the existing St. Louis Park structure, AVR's testimony regarding necessary size of potential relocation sites, and the voluntary relocation and/or new construction actions of other ready-mix businesses in the Twin Cities area, AVR's St. Louis Park Facility has passed its useful life and AVR has had a reasonable opportunity to recover its economic investment.

*Id.* ¶ 39.

In December 1995, AVR commenced an action seeking a declaration that the city's adoption of the amortization ordinance and the ordinance establishing a two-year amortization period for AVR's plant (1) violate AVR's right to due process of law; (2) violate AVR's right to equal protection of the laws; (3) violate AVR's vested rights by eliminating concrete ready-mix plants as a special or permitted use; and (4) constitute an unconstitutional taking of AVR's property without just compensation. AVR and the city made cross-motions for summary judgment. On January 15, 1998, the district court granted summary judgment to the city and dismissed AVR's complaint. This appeal followed.

## ISSUES

1. Did the district court err in deferring to the city's broad discretion to adopt an ordinance establishing a two-year amortization period for AVR's plant?

2. Did the district court err in upholding the city's ordinance establishing a two-year amortization period for AVR's plant?

3. Did the district court err in concluding that the city's adoption of an amortization ordinance and an ordinance establishing a two-year amortization period for AVR's plant does not violate AVR's right to equal protection of the laws?

## ANALYSIS

On appeal from summary judgment, a reviewing court determines whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). In making its determinations, "the court must view the evidence in the light most favorable to the nonmoving party." *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 571 (Minn.1994).

## I.

▪ AVR contends that the city's adoption of an amortization ordinance for AVR's plant is equivalent to a decision to grant or deny a variance or special use permit. Therefore, AVR argues, the city's decision is quasi-judicial and the courts should afford it less deference than they would give a legislative zoning decision. Minnesota courts have distinguished

between zoning matters which are legislative in nature (rezoning) and those which are quasi-judicial (variances and special use permits). Even so, the standard of review is the same for all zoning matters, namely, whether the zoning authority's action was reasonable. Our cases express this standard in various ways: Is there a "reasonable basis" for the decision? or is the decision "unreasonable, arbitrary or capricious"? or is the decision "reasonably debatable"?

*Honn v. City of Coon Rapids,* 313 N.W.2d 409, 416–17 (Minn.1981). But application of the reasonableness standard depends on the zoning action at issue:

[I]n legislative zoning, the municipal body is formulating public policy, so the inquiry focuses on whether the proposed use promotes the public welfare. In quasi-judicial zoning, public policy has already been established and the inquiry focuses on whether the proposed use is contrary to the general welfare as already established in the zoning ordinance. Consequently, the reviewing courts, in determining what is reasonable, should keep in mind that the zoning authority is less circumscribed by judicial oversight when it considers zoning or rezoning than when it considers a special use permit or a variance.

*Id.* at 417. AVR argues that because the amortization ordinance "does not effect a zoning change to unimproved property" but rather "terminat[es] AVR's use of the property" as a ready-mix plant, it is "equivalent to the grant or denial of a special use permit." We disagree. *See Naegele Outdoor Adver. Co. v. Village of Minnetonka,* 281 Minn. 492, 501, 503, 162 N.W.2d 206, 213, 215 (1968) (identifying ordinance establishing amortization period as legislative device and stating power to enact "this type of zoning requirement" is implied); *DI MA Corp. v. City of St. Cloud,* 562 N.W.2d 312, 319–20 (Minn.App.1997) (analyzing validity of amortization ordinance under statute that establishes requirements for amendments to zoning ordinances).

Because zoning or rezoning classifications are legislative acts, courts must uphold them unless

[their] opponents prove that the classification is unsupported by any rational basis related to promoting the public health, safety, morals, or general welfare, or that the classification amounts to a taking without compensation. This rule applies regardless of the size of the tract of land involved.

*State by Rochester Ass'n of Neighborhoods v. City of Rochester,* 268 N.W.2d 885, 888 (Minn.1978).

AVR has not shown that the city's adoption of the ordinance establishing an amorti-

zation period for AVR's plant is unsupported by any rational basis related to the promotion of the public health, safety, morals, or general welfare. Because the city's establishment of an amortization period for a preexisting nonconforming use was a legislative act, we conclude that the district court did not err in deferring to the city's broad discretion.

## II.

AVR contends that the two-year amortization period for its plant is unreasonable. In establishing the length of the amortization period, the city considered the plant's "useful life," a term the Minnesota Supreme Court has used but has not defined. *Naegele,* 281 Minn. at 501, 162 N.W.2d at 213 (stating only "that the useful life of the nonconforming use corresponds roughly to the amortization period"). The city based its determination of useful life on its conclusion that AVR had recouped its original investment and, to a lesser extent, on the fact that the property has been fully depreciated for income tax purposes. In addition, the city considered the other factors it had adopted by ordinance.

AVR argues that the city acted unreasonably in failing to consider "the remaining useful economic or expected life" in determining the length of the amortization period. *See, e.g., City of La Mesa v. Tweed & Gambrell Planing Mill,* 146 Cal.App.2d 762, 304 P.2d 803, 808 (Cal.Dist.Ct.App.1956) (noting estimated 21 years of remaining economic life as one reason for holding five-year amortization period arbitrary and unreasonable). In *Naegele,* the supreme court stated only that the underlying issue in determining the length of an amortization period is whether it is reasonable. 281 Minn. at 501, 162 N.W.2d at 213.

In analyzing the reasonableness of an amortization period, courts in some jurisdictions have considered the property owner's recoupment of its original investment. *See, e.g., Rives v. City of Clarksville,* 618 S.W.2d 502, 510 (Tenn.Ct.App.1981) (considering length of amortization period in relation to property owner's investment); *Town of Islip v. Caviglia,* 73 N.Y.2d 544, 542 N.Y.S.2d 139,

540 N.E.2d 215, 224 (N.Y.1989) (determining reasonableness by examining all facts, including length of amortization period in relation to investment); *City of University Park v. Benners,* 485 S.W.2d 773, 777 (Tex.1972) (noting that termination of nonconforming use after amortization period allowing recoupment of investment is not unconstitutional taking).

Courts also have considered whether the property in question has been fully depreciated for income tax purposes in reviewing the reasonableness of an amortization period, although this factor alone has not been held to be determinative. *See, e.g., Art Neon Co. v. City & County of Denver,* 488 F.2d 118, 122 (10th Cir.1973) (considering depreciation for tax purposes); *National Adver. Co. v. County of Monterey,* 1 Cal.3d 875, 83 Cal. Rptr. 577, 464 P.2d 33, 35–36 (Cal.1970) (holding that where billboards have been fully depreciated for tax purposes, amortization period was not unreasonable); *Village of Skokie v. Walton on Dempster, Inc.,* 119 Ill.App.3d 299, 74 Ill.Dec. 791, 456 N.E.2d 293, 297 (Ill.App.Ct.1983) (concluding that amortization period was reasonable where property was completely depreciated for tax purposes); *Philanz Oldsmobile, Inc. v. Keating,* 51 A.D.2d 437, 381 N.Y.S.2d 916, 920 (N.Y.App.Div.1976) (stating that where signs had been fully depreciated for tax purposes, financial loss is nonexistent).

■ To the extent AVR's contention that the city should have considered the "remaining useful economic or expected life" of AVR's plant is another way of saying that the amortization period should be based on the plant's fair market value or its replacement cost, the argument leads to illogical and contradictory consequences. As one court has recognized:

> [A]pplication of the market-value standard would result in a vicious circle: market value depends on the period of expected nonconforming use, and the period of nonconforming use allowed depends on market value. * * *
>
> Cost of replacing the nonconforming structure, even with an allowance for depreciation, would also provide an unsat-

isfactory measure of recoupment. A landowner is not permitted to extend the period of nonconforming use by replacements or improvements because [the owner] would be able to extend the nonconforming use indefinitely * * *. To allow replacement cost as a measure of the recoupment allowed would thus allow unjustified extension of the nonconforming use. Moreover, [it] would ignore the factor of obsolescence, which might be substantial * * *.

*Murmur Corp. v. Board of Adjustment,* 718 S.W.2d 790, 796–97 (Tex.App.1986) (citations omitted).

■ Here, the city used a combination of recoupment of investment and tax depreciation status as factors in determining the useful life for AVR's plant.[1] The record shows that over the past 23 years the plant provided AVR a return of approximately 560% on its investment and that the plant has been fully depreciated for income tax purposes. These two factors provided the city with a reasonable basis to determine the plant's useful life for purposes of establishing an amortization period.

AVR also argues that the city's findings with respect to the factors it adopted by ordinance are not supported by sufficient evidence, claiming that the city virtually ignored the ordinance factors in favor of other factors and considerations. But the record shows that in establishing the amortization period for AVR's plant, the city considered each of the factors in its amortization ordinance and that the city's findings regarding these factors are supported by record evidence.

AVR further contends that in determining the length of the amortization period, the city gave undue deference to the opinions of area residents instead of applying the factors required by the city's ordinance. In support of its argument, AVR cites *Trisko v. City of Waite Park,* in which this court held that a municipality must base a decision to deny a conditional use permit on "something more concrete than neighborhood opposition and expression of concern for public safety."

*Trisko v. City of Waite Park,* 566 N.W.2d 349, 355 (Minn.App.1997) (quoting *Chanhassen Estates Residents Ass'n v. City of Chanhassen,* 342 N.W.2d 335, 340 (Minn.1984)), *review denied* (Minn. Sept. 25, 1997).

This case does not involve denial of a conditional use permit, which is a quasi-judicial determination and therefore subject to closer scrutiny. But even if *Trisko* were applied to the city's adoption of the ordinance establishing a two-year amortization period, the record shows that the city's decision was based on more than neighborhood opposition to AVR's plant and expression of concern for public safety. For example, the city found that the quality of life for surrounding residents will increase by allowing the city to improve the general appearance and image of the city. The city also found that amortization of AVR's plant will create redevelopment opportunities that will help satisfy a demand for certain housing needs and increase property values in the immediate vicinity, which, in turn, will increase real estate taxes and benefit the entire community.

AVR further argues that the two-year period is unreasonable because amortization periods should be lengthened "when the amortization is not consistent with the surrounding area or any solid redevelopment plan," noting that the area surrounding the plant is not exclusively residential. But the record shows that the city's rezoning of AVR's property from I–4 Industrial to R–4 Multifamily Residential is consistent with its plans for the surrounding area.

AVR claims that the two-year amortization period is unreasonable because the ordinance terminates the use of a structure, not just a particular use, and that the amortization period for a structure is generally longer than for a use. But AVR did not raise this issue to the district court, and, generally, this court refuses to address issues not presented to or decided by the district court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). Because the issue is not properly before the court, we do not address it.

---

1. At oral argument, the city conceded that it considered the tax depreciation status of the AVR plant only as a secondary factor and that recoupment of investment was a primary factor.

Finally, AVR argues that the two-year amortization period is unreasonable because the city was motivated by aesthetic rather than health and safety considerations. But "a desire to achieve aesthetic ends should not invalidate an otherwise valid ordinance." *Naegele,* 281 Minn. at 499, 162 N.W.2d at 212. In addition, the city enacted the ordinance establishing the two-year amortization period for several reasons, including improvement of the general welfare by reducing noise, dust, and traffic.

Because the ordinance establishing a two-year amortization period for AVR's plant reflects the city's consideration of the plant's useful life and an analysis of other relevant factors adopted by the city, the district court did not err in upholding the city's two-year amortization period.

### III.

AVR contends that the city's amortization ordinance and its ordinance establishing a two-year amortization period for AVR's plant violate its right to equal protection of the laws. "A municipal zoning ordinance is presumed constitutional. The burden of proving the ordinance is unconstitutional rests on the party attacking its validity." *DI MA Corp.,* 562 N.W.2d at 320 (citation omitted).

■■■ Under the Equal Protection Clause, "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause requires that all persons similarly situated be treated alike under the law. *In re Harhut,* 385 N.W.2d 305, 310 (Minn.1986). But where the party complaining of the disparate treatment is not a member of a suspect class and the legislation does not infringe on a fundamental right, this court will uphold a municipality's ordinance where it is rationally related to a legitimate governmental purpose. *Arcadia Dev. Corp. v. City of Bloomington,* 552 N.W.2d 281, 288 (Minn.App.1996), *review denied* (Minn. Oct. 29, 1996).

■■■ AVR argues that the city is treating it differently from Al's Liquor Bar, arguing that the two are similarly situated. In the 1992 zoning ordinance, the city identified both properties as preexisting nonconforming uses to be amortized. In 1995, the city excepted all existing bars from amortization. But the district court concluded that the city "has not treated similarly situated entities differently." We agree. There are no other ready-mix plants in the city. AVR's plant is a heavy industrial use that causes "significantly more severe and disruptive" amounts of noise and dust than does Al's Liquor Bar. Because AVR has not shown disparate treatment of similarly situated property owners, the district court did not err in concluding that the city has not violated AVR's equal protection rights.

### DECISION

Because the city's action was a legislative decision, the district court did not err in deferring to the city's broad discretion to adopt an ordinance establishing a two-year amortization period for AVR's plant. Additionally, because the ordinance establishing an amortization period for AVR's plant is based on the city's consideration of the plant's useful life and application of other relevant factors, the district court did not err in upholding the city's establishment of a two-year amortization period. Finally, because AVR did not demonstrate disparate treatment of similarly situated property owners resulting from the enactment of the amortization ordinance and the ordinance establishing a two-year amortization period for AVR's plant, the district court did not err in concluding that there is no equal protection violation.

**Affirmed.**