*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0046**

Katherine Gayl, et al.,
Plaintiffs,

Paul R. Scarpari, et al.,
Appellants,

vs.

City of Rosemount,
Respondent,

Friedges Excavating, Inc.,
Respondent.

**Filed August 8, 2016
Affirmed; motion denied
Halbrooks, Judge**

Dakota County District Court
File No. 19HA-CV-15-462

James P. Peters, Law Offices of James P Peters PLLC, Glenwood, Minnesota (for appellants)

Jessica E. Schwie, Jardine, Logan & O'Brien, PLLP, Lake Elmo, Minnesota (for respondent City of Rosemount)

Timothy J. Grande, Patrick C. Summers, DeWitt Mackall Crounse & Moore, S.C., Minneapolis, Minnesota (for respondent Friedges Excavating, Inc.)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Jesson, Judge.

**HALBROOKS**, Judge

Appellants, residents of the immediate area, challenge the district court's grant of summary judgment to respondent City of Rosemount following the city's approval of a planned unit development (PUD). Appellants argue that the city lacked a rational basis to rezone the parcel of property the PUD is located on and that the city acted arbitrarily and capriciously when it approved the preliminary plat, master development plan, and final plat for the PUD. Before oral argument, respondents moved to dismiss the appeal as moot. We deny the motion to dismiss because respondents did not satisfy their burden to establish that the appeal is moot. Because the city had a rational basis to rezone the property and did not act arbitrarily or capriciously by approving the plats and plan, we affirm.

## FACTS

In the summer of 2014, Friedges Excavating, Inc. applied to the city for a PUD in order to develop a parcel of land known as Wilde Lake Estates (the property). The property, approximately 56 acres of land, is located just to the north of McAndrews Road and is divided by Dodd Boulevard. Forty-nine acres are located between Dodd Boulevard and South Robert Trail, and another seven acres are located to the west between Dodd Boulevard and a neighboring property. There are three wetlands on the property. Thirty-seven acres of the property were formerly zoned agricultural (AG), and the remaining 19 were zoned rural residential (RR). Based on the zoning, Friedges could

have developed 11 buildable lots. Friedges applied for a PUD, in part to increase the number of buildable lots to 14.

The planning commission held a public hearing on July 22, 2014. During that meeting, Friedges asked the planning commission to recommend to the city council that it approve the preliminary and final plats and the master development plan. According to the plan, the seven acres to the west of Dodd Boulevard were to be divided into two lots. The other 12 lots were to be located on a cul-de-sac connected to the road on the property to the east of Dodd Boulevard. The properties to the east of Dodd Boulevard are bordered by wetlands on the north and south sides.

In accordance with the PUD procedure outlined in the Rosemount City Code, Friedges asked the city to rezone the property from AG and RR to RR PUD. To secure the extra lots and build the development as it planned, Friedges requested that the city (1) decrease the minimum lot size on the property by 20% (2.5 acres to 2 acres); (2) decrease the minimum lot width by 20% (200 feet to 160 feet); (3) increase the maximum density by 20% (1 unit per 5 acres to 1 unit per 4 acres); and (4) extend the maximum cul-de-sac length from 700 feet to 1,010 feet.

In exchange for these modifications, approximately 4.5 acres of land would be dedicated to the city for a regional trail that runs from Lebanon Hills Regional Park to downtown Rosemount and two outlots for rest areas along the trail and a possible future underpass. The conditions of approval created minimum design standards for the homes that could be built on the property. Finally, Friedges promised to put $226,700 into

escrow, with the expectation that the money would be used by the city to pave Dodd Boulevard.

The July 22 meeting was open for public comment for approximately 40 minutes. Fifteen people spoke for or against the proposal—the majority in opposition. The speakers raised concerns about the potential paving of Dodd Boulevard, changing the minimum lot size, and changing the maximum cul-de-sac length. They also voiced concerns about changing the rural character of the area; the project's impact on wetlands, property values, storm water management, and traffic; safety; and potential septic system problems. Ultimately, the planning commission recommended that the city council allow Friedges to develop the property as a PUD.

The city council considered the proposal in a public meeting on November 18, 2014. The city received several written objections, including one from appellants that highlighted concerns about the PUD's proposed density standards. During the meeting, citizens voiced many of the same concerns that they had expressed in the planning commission meeting. After an amendment to relocate the placement of a road on the property to respond to neighborhood concerns, the city approved Friedges's application, including the preliminary plat, master development plan, final plat, and subdivision agreement and adopted an ordinance to amend the zoning district for the property to RR PUD.

Appellants challenged the city's decision in a complaint filed in district court under Minn. Stat. § 462.361, subd. 1 (2014). Appellants sought a declaration that the project violates ordinances and statutes and requested that the approval be vacated.

Appellants also requested injunctive relief, reversing the city's decision, enjoining Friedges from developing the property, and enjoining the city from granting any approvals on the application. Both parties moved for summary judgment, and the district court granted respondents' motion. This appeal follows.

**D E C I S I O N**

**I.**

Prior to oral argument, Friedges filed a motion, in which the city joined, to dismiss this appeal as moot. The mootness doctrine "requires that we decide only actual controversies and avoid advisory opinions." *In re McCaskill*, 603 N.W.2d 326, 327 (Minn. 1999). When a decision on the merits is no longer necessary or an award of effective relief is no longer possible, an appellate court should dismiss an appeal as moot. *Dean v. City of Winona*, 868 N.W.2d 1, 5 (Minn. 2015) (citing *In re Application of Minnesgasco*, 565 N.W.2d 706, 710 (Minn. 1997)). The burden of showing mootness is on the party asserting it. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98, 113 S. Ct. 1967, 1976 (1993). An assessment of mootness requires "a comparison between the relief demanded and the circumstances of the case at the time of decision in order to determine whether there is a live controversy that can be resolved." *Minnesgasco*, 565 N.W.2d at 710.

Relying on *Moore v. McDonald*, 165 Minn. 484, 205 N.W. 894 (1925) (per curiam), *Troy v. City of St. Paul*, 155 Minn. 391, 193 N.W. 726 (1923), and *Apple Valley Square v. City of Apple Valley*, 472 N.W.2d 681 (Minn. App. 1991), respondents argue

that the appeal is moot because the project is substantially complete. Each of the three cases is distinguishable.

In *Moore*, the supreme court held in a per curiam opinion that the question of the appropriateness of denial of a temporary injunction restraining a railway company from constructing a bridge was moot when, following denial, the bridge construction was completed. 165 Minn. at 485, 205 N.W. at 895. The supreme court stated, "A reversal of the order, and the issuance at this time of the temporary injunction asked for, would accomplish nothing." *Id.* Here, while Friedges has completed most of its work on the development, not all of the homes have been constructed nor have all of the lots been sold.

In *Troy*, the supreme court held that the appeal was moot because the city ordinance on which the appeal was based had been amended while the appeal was pending. 155 Minn. at 393-94, 193 N.W. at 727. Here, respondents do not assert that the law has changed in a way that renders appellants' claim moot. In addition, the claimant in *Troy* filed an original complaint before the city had issued a permit for the building. *Id.* at 393, 193 N.W. at 727. But after the original complaint was dismissed, the city issued a permit for the property and construction began. *Id.* The claimant did not attempt to file an amended complaint until a month later. *Id.* By the time the challenge reached the supreme court, construction was complete. *Id.* As previously noted, the construction in the present matter is not complete nor did appellants wait until the city had already granted approval of Friedges's plan to challenge the project.

In *Apple Valley Square*, this court concluded that because the appellant did not file suit until one month before the affected commercial development opened for business, the case was barred by laches and dismissed as moot. 472 N.W.2d at 683. We stated that, "given the delay in bringing the action and the substantial completion of the project, equitable relief would not be appropriate." *Id.* Appellants in this case did not delay in seeking relief, but objected orally at the meetings on July 22 and November 18 and in writing between the meetings.

An award of effective relief could still be available for appellants. Appellants stressed during oral argument that they do not object to development of the land. What they challenge is the allowance for extra lots through the use of the PUD procedure. We therefore conclude that respondents have not shown that effective relief is no longer available, and this appeal is not moot.

## II.

Appellants argue that the city did not have a rational basis to rezone the property. In an appeal of a municipal zoning decision, "[w]e do not give any special deference to the conclusions of the lower courts, but rather engage in an independent examination of the record and arrive at our own conclusions as to the propriety of the city's decision." *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 180 (Minn. 2006).

The standard of review for city zoning matters is "whether [a city's] action was reasonable." *AVR, Inc. v. City of St. Louis Park*, 585 N.W.2d 411, 414 (Minn. App. 1998) (quotation omitted), *review denied* (Minn. Dec. 15, 1998). But we apply the reasonableness standard differently depending on if the city's decision is a legislative

7

decision or a quasi-judicial decision, affording more deference to the decision if it is legislative. *Id.* The adoption or amendment of a zoning ordinance, regardless of the size of the tract involved, is a legislative decision. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn. 1981).

We utilize a rational-basis standard of review for a legislative decision to determine whether it is reasonable. *Mendota Golf*, 708 N.W.2d at 179. We will uphold a decision to amend a zoning ordinance "unless the party challenging that decision establishes that the decision is unsupported by any rational basis related to promoting the public health, safety, morals, or general welfare." *Id.* at 180 (quotation omitted). "[E]ven if the city council's decision is debatable, so long as there is a rational basis for what it does, the courts do not interfere." *Honn*, 313 N.W.2d at 415. When a legislative decision is reviewed, "the challenger bears the burden of showing that the [city's] stated reasons are either without factual support in the record or are legally insufficient." *Larson v. County of Washington*, 387 N.W.2d 902, 906 (Minn. App. 1986), *review denied* (Minn. Aug. 20, 1986).

Respondents contend that the city's decision to rezone the property is rationally related to the promotion of public health and welfare because it furthers regional recreational interests, protects wetlands and trees, and improves water quality. Appellants respond that the city's interests could be addressed using other means and that the city actually rezoned the property for financial reasons. Appellants fail to address how the city's bases for rezoning the property are factually or legally insufficient, even if

they could have been achieved through other means. We conclude that the city had a rational basis for amending the ordinance.

## III.

Appellants assert that the city's approvals of the preliminary plat, final plat, and master development plan were arbitrary and capricious. Because the city had to determine if Friedges's application was lawful according to the Rosemount City Code, the city's approvals are akin to judicial proceedings, which qualifies them as quasi-judicial decisions. *See County of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 539 (Minn. 2012) (describing the difference between legislative decisions and quasi-judicial decisions). On appeal, we determine whether a city's quasi-judicial decision is reasonable. *Yeh v. County of Cass*, 696 N.W.2d 115, 124-25 (Minn. App. 2005), *review denied* (Minn. Aug. 16, 2005). A quasi-judicial decision is unreasonable if it is arbitrary or capricious. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn. 1983). If a city's decision is "prohibited under the zoning ordinance," it is arbitrary or capricious, and we will reverse. *Sunrise Lake Ass'n v. Chisago Cty. Bd. of Comm'rs*, 633 N.W.2d 59, 62 (Minn. App. 2001).

Appellants argue that Rosemount, Minn., City Code (RCC) § 11-4-3 (2015) expressly precludes the use of a PUD on land that is zoned RR, relying on section E from RCC § 11-4-3, which states: "Uses Permitted by PUD: None." The phrase "Uses Permitted by PUD" is defined in RCC § 11-1-4 (2015) as "[a] use which is permitted *only* if the PUD procedure is used and a plan is formally approved by the city" (emphasis added). In other words, the "Uses Permitted by PUD" sections allow the city to use the

9

PUD procedure in some districts to expand the acceptable uses. *See* RCC § 11-4-8(E) (2015) (allowing the city to use the PUD procedure to permit developers to put in manufactured home parks, which would not otherwise be allowed in the residential zoning district outlined in RCC § 11-4-8(A) (2015)). But RCC § 11-4-3(B) allows for property owners of RR-zoned property to use the property for "[s]ingle-family detached dwellings." Friedges therefore did not need to use the PUD procedure to build single-family detached dwellings. And the use of a PUD for that purpose is not contrary to RCC § 11-4-3.

Appellants contend that the property density standards approved by the city are contrary to requirements set by the city's ordinances and comprehensive plan. Appellants rely on RCC § 11-10-6(B)(3) (2015), which provides:

> Each residential PUD or the residential portion of each mixed use PUD shall have a density within the range specified in the comprehensive plan for the PUD site. The density of individual buildings or lots within a PUD may exceed these standards, provided the density for the entire PUD does not exceed the permitted standards.

According to the city's comprehensive plan, the density for property zoned RR is "[o]ne (1) unit per five (5) acres."

But the city is allowed to deviate from the default density standards set in RCC § 11-10-6(B)(3) under RCC § 11-10-6(C)(2) (2015). RCC § 11-10-6(C)(2) states, "Regulations governing uses and structures in the PUD shall be the same as those governing the underlying zoning district subject to the following: a. Regulations may be modified expressly by conditions imposed by the council at the time of rezoning to

10

PUD." The conditions of the city's approval to rezone the property amended the density of the property from one unit per five acres to one unit per four acres. Therefore, the city's decision is not contrary to RCC § 11-10-6(B)(3).

Appellants contend that the city unlawfully combined the preliminary and final plat-approval processes when it approved both plats at the city council meeting. Under Minn. Stat. § 462.358, subd. 3b (2014), a city code "may provide for the consolidation of the preliminary and final review and approval or disapproval of subdivisions." The RCC allows for the consolidation of the preliminary and final plat approval when the following conditions are met:

> 1. The resulting subdivision shall contain no more than five (5) acres or three (3) lots for commercial plats, and no more than ten (10) acres or twenty (20) lots for residential plats.
>
> 2. Resulting parcels shall conform with all zoning ordinance requirements.
>
> 3. The proposed subdivision shall contain no more than one phase for final platting.

RCC § 12-2-5(B)(1)-(3).

Appellants argue that the approved plats do not satisfy the first or second conditions. According to the approved plats, the property includes only 14 lots, which satisfies the first condition. And the resulting parcels conform with all zoning ordinance requirements through the use of the PUD procedure. The city therefore did not unlawfully combine the approval processes.

11

Appellants also argue that the city granted the approvals out of order at the city council meeting by approving the preliminary and final plats first instead of addressing matters in the following sequence: (1) the preliminary plat, (2) the master development plan, (3) the ordinance rezoning the property, and (4) the final plat. Appellants cite the resolution numbers of the approvals as evidence to support its argument. But this argument lacks merit. Upon review of the city council meeting minutes and the video of the meeting, the approvals were passed in the order that appellants argue they should have been.

Appellants argue that Friedges failed to timely submit a complete application and application fees and failed to properly acquire plat approvals from the county before receiving plat approvals from the city. Respondents assert that both arguments were not properly raised before the city. In order to raise an issue on appeal, it must have been properly raised before the local zoning authority. *See Big Lake Ass'n v. St. Louis Cty. Planning Comm'n*, 761 N.W.2d 487, 491 (Minn. 2009) (applying the standard to a certiorari review of a local zoning-board decision). To determine if an issue is properly raised on appeal, "we review the record to determine whether the issue was fairly raised for consideration by the" city council. *Id.* "The issue does not need to be framed in precise legal terms, but there must be sufficient specificity to provide fair notice of the nature of the challenge so that the zoning authority has an opportunity to consider and address the issue." *Id.*

Appellants argue that the first issue was preserved by a letter sent to the mayor and city council. But the letter did not claim that Friedges's application was incomplete.

12

Because no one provided the city with fair notice of the nature of the challenge, we conclude that it was not properly raised and decline to address it. Appellants provide no response for how the second argument was preserved, and we have found no reference to the argument in the record. We therefore conclude that it is not properly raised on appeal and decline to address it.

Finally, appellants argue that the city failed to take a "hard look" at the relevant issues by failing to give the public an adequate opportunity to be heard and improperly relying on city staff reports before making its quasi-judicial decisions. We are not persuaded.

Residents engaged in an open discussion with the city council and other persons involved in the PUD during two different meetings. During the planning commission meeting, citizens were allowed to speak for 40 minutes. Following public comments, the developer, city planner, city engineer, as well as members of the planning commission responded to the public's concerns. After the planning commission meeting, and up until the city council meeting almost four months later, the city allowed the residents to submit written support or opposition for the project. The city then opened the floor for public comment during the city council meeting and allowed for discussion with the realtor, the city planner, the mayor, and the city council for more than one and one-half hours. The record does not support the assertion that the city improperly relied on its staff or failed to provide the public with an opportunity to be heard before making its decision.

**Affirmed.**